389 A.2d 1192

**Norman A. SINDLER and Marilyn Sindler**

v.

**Gilbert S. GOLDMAN, M.D., Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 16, 1977.

Decided July 12, 1978.

418

Gerald C. Paris, Pittsburgh, with him Reed, Smith, Shaw & McClay, Pittsburgh, for appellant.

William S. Smith, Pittsburgh, with him Cooper, German, Kelly & Smith, Pittsburgh, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, President Judge:

This appeal is taken from an order of the court en banc granting appellees' motion for a new trial in a medical malpractice action. The issue we must decide is whether the court below abused its discretion in holding that the jury verdict for appellant was contrary to the evidence presented at trial. For the reasons that follow, we find it did, and therefore reverse the order entered below.

Shortly before July 6, 1971, Marilyn Sindler consulted Dr. Goldman, a general surgeon, for treatment of a growth on

the left side of the base of her neck. Following his advice, Mrs. Sindler submitted to surgery at Montefiore Hospital on July 6, 1971, and the growth was removed. A short time after the operation, Mrs. Sindler began to experience pain in the area of the surgery, and suffered some loss of motion in her left arm. She spoke with appellant and one of his associates, but was apparently dissatisfied, and subsequently consulted another physician, who referred her to Dr. Norbert Weikers, a neurologist. Dr. Weikers examined plaintiff and observed abnormal protrusion of the left shoulder blade, and atrophy of the superior portion of the left trapezius muscle. He opined that this muscular atrophy was caused by severance of the spinal accessory nerve during surgery.[1]

Plaintiff also consulted Dr. Peter Sheptak, a neurosurgeon, and Dr. Sebastian Arena, a head and neck surgeon, both of whom stated that Mrs. Sindler's injuries were caused by surgical intervention.

This action in trespass was thereupon instituted on November 21, 1973, alleging negligence in causing damage during surgery, and in failing to subsequently repair the damage. Plaintiff and her husband both testified, and introduced the depositions of Doctors Weikers, Sheptak, and Arena. Appellant testified on his own behalf at trial, and stated that he did not violate the standards of medical practice, that he did not identify the spinal accessory nerve during surgery, and that he did not sever the nerve. Dr. Goldman produced no other defense witnesses.

On April 5, 1976, the jury returned a verdict for appellant on both counts, whereupon plaintiffs moved for a new trial. The court en banc granted the motion on the basis that the verdict was contrary to the evidence and this appeal followed.

Our scope of review on this appeal is established by the standard that the grant or refusal of a new trial is

1. Dr. Sheptak, one of plaintiff's experts, testified that the spinal accessory nerve, which is the eleventh cranial nerve, activates the trapezius muscle. Record at 172. See L. Wolfstone, J. Leibman, R. Bingham, & C. Parnell, 2 Courtroom Medicine § 7.20 (1975).

within the sound discretion of the trial judge, subject to our examination for a palpable abuse of discretion or a clear error of law which controlled the grant of a new trial. *Gilligan v. Shaw*, 441 Pa. 305, 272 A.2d 462 (1971); *Getz v. Balliet*, 431 Pa. 441, 246 A.2d 108 (1968). The trial court has not only the power, but the duty to grant a new trial where the jury verdict is so diametrically opposed to the evidence that the judicial conscience cannot allow the result to stand, or the judicial process has effected a serious injustice. *Austin v. Ridge*, 435 Pa. 1, 255 A.2d 123 (1969); *Pritchard v. Malatesta*, 421 Pa. 11, 218 A.2d 753 (1966). In reviewing the action of the trial court, we must examine all the evidence presented at trial. *Hayter v. Sileo*, 230 Pa.Super. 329, 326 A.2d 462 (1974).

Both plaintiffs testified that Mrs. Sindler had experienced no difficulty with her arm or shoulder until immediately after the operation. Mrs. Sindler also testified that she informed defendant and his associate of the pain she was experiencing after the operation, but that she was told the pain would go away.

Through the videotape depositions of expert medical witnesses, plaintiffs presented testimony that the spinal accessory nerve should be identified in surgery of this nature, and if severed, should be reanastomized.[2] As previously mentioned, plaintiffs' experts also opined that Mrs. Sindler's injuries were causally related to the surgery performed by Dr. Goldman.

Appellant testified that he did not identify the spinal accessory nerve because to do so would have required a deeper incision than necessary to excise the growth. He also testified that he would have repaired the nerve if severed, but that he was unaware of Mrs. Sindler's post-operative difficulties as reflected by the absence of any notes to that effect in his medical records, and the fact that his associate

---

2. Dr. Arena's testimony indicated that reanastomosis would entail sewing together the severed ends of the nerve. Record at 143–44. *See* J. Schmidt, 1 Attorneys' Dictionary of Medicine pp. A–156–57 (1977).

who examined Mrs. Sindler did not inform him of any complaints.[3]

■■ We must be mindful of the fact that conflicts in the evidence are to be resolved by the fact-finder, and that a new trial may not be granted merely on the basis that the trial court would have reached a different conclusion on the evidence presented. *Kralik v. Cromwell*, 435 Pa. 613, 258 A.2d 654 (1969); *Pritts v. Wigle*, 414 Pa. 309, 200 A.2d 386 (1964). In this case, there were conflicts in the evidence on the crucial issues of the standard of care, severance of the nerve during surgery, and appellant's awareness of Mrs. Sindler's complications after surgery. Furthermore, plaintiffs' medical experts testified that their opinions were largely based upon Mrs. Sindler's relation of events, and that it was possible that the spinal accessory nerve had been occluded by scar tissue. Even the trial judge recognized the existence of conflicts and contradictions in the evidence, and he so advised the jury in his charge. N.T. Trial pp. 251–52. In light of these facts, the lower court abused its discretion in granting a new trial on the basis that the verdict was contrary to the evidence.

This determination does not, however, dispose of the new trial motion. In support of their motion for a new trial, plaintiffs contended that the trial court erred in permitting appellant to testify as an expert witness in violation of Allegheny County Court Rules. Rule 212 VI(C)(1)(d) of those Rules provides:

> Defendant . . . [s]hall serve upon all other parties a written statement containing: . . . [t]he reports of any expert whose opinion will be offered in evidence at the time of trial. Such report shall include the findings and conclusions of the expert.

Furthermore, Rule 212 VI(E) states:

> Witnesses . . . whose reports have not been furnished under . . . VI C.1.d. . . . will not,

---

**3.** Dr. Chetlin, the associate of Dr. Goldman who examined Mrs. Sindler after the operation, was unavailable to testify because he died before trial. Record at 233–34.

under any circumstances whatsoever, be permitted to testify at the subsequent trial of the case.

Plaintiffs objected to appellant's opinion testimony at trial because no pretrial expert report had been filed with respect to Dr. Goldman, but the court permitted the testimony. Because the lower court granted a new trial on the basis that the verdict was contrary to the evidence, it declined to rule on this question.

Accordingly, the order of the lower court granting plaintiffs a new trial is reversed, and the case remanded for consideration of the remaining allegations in support of the new trial motion.

CERCONE, J., files a concurring opinion.

PRICE, J., dissents and would reverse and enter judgment on the verdict for appellant. The local rule involved cannot bar a party's testimony.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

CERCONE, Judge, concurring:

I join in the majority's disposition of this case, including its remand to give the court below the opportunity to consider the applicability of Allegheny County's Local Rule of Civil Procedure, Rule 212 VI(C)(1)(d). On this latter point, however, I agree reluctantly. Ordinarily, if the court's refusal to apply the rule to Dr. Goldman's testimony as an expert were error, we could employ that rule to affirm the court's awarding plaintiffs a new trial. See generally 3 Vale's Pa. Digest, Appeal & Error § 854(a) (1966). On the other hand, if that ground did not provide a basis for a new trial, we could simply reverse the court's order in this case and order that judgment be entered for defendant. Unfortunately, not only did the lower court not treat the issue involving the local rule in its opinion in the instant case, appellant did not allude to it in his brief. Only appellees offer any discussion of the issue, and even they only request a remand on that issue rather than an affirmance of the

court's order.* Although a remand may be a wasteful and temporizing procedure likely to provoke another appeal in this case, given the tack the parties have taken I see no other alternative.

---

\* Had appellees raised the issue in support of affirmance of the lower court's order, appellant's failure to argue the issue in his brief, or request leave of court to file a reply brief pursuant to Pa.R.App.P., Rule 2113(d), may have resulted in our treating the issue solely on the basis of appellees' brief. See also Pa.R.App.P., Rules 2101 & 2188.