542 A.2d 72

**JEWELCOR JEWELERS AND DISTRIBUTORS, INC. and Jewelcor, Incorporated,**

v.

**Paul J. CORR, Raymond L. Croft, James A. Flick, Jr., William F. Grauer, Edward W. Kay, Neill R. Schmeichel, Robert J. Seider, William J. Stone, Homer E. Ullman and John W. Wilchek, a Partnership t/a Ernst & Whinney, Appellants.**

Superior Court of Pennsylvania.

Argued Sept. 9, 1987.

Filed April 11, 1988.

Reargument Denied June 6, 1988.

538

Jack Kaufman, Allentown, for appellants.

Marvin Comisky, Philadelphia, for appellees.

Before CIRILLO, President Judge, and POPOVICH and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from the order of the Court of Common Pleas of Luzerne County entered December 19, 1986 granting appellees' Motion for New Trial.

On March 25, 1977, appellees Jewelcor, Inc. (referred to herein as "Jewelcor") and its wholly owned subsidiary Jewelcor Jewelers and Distributors, Inc. (formerly known as Granjewel Jewelers and Distributors, Inc., and referred to herein as "Granjewel") initiated this civil action by filing a complaint, which was subsequently amended on September 28, 1977. The amended complaint asserted that appellant Ernst & Ernst, an accounting partnership, (now known as Ernst & Whinney; and referred to herein as "E & W") was negligent, grossly negligent and breached its oral contract with Granjewel in the conduct of E & W's audit of Granjewel's first yearly financial statements and in the issuance of the resultant report and opinion letter. The amended complaint also asserted that Jewelcor, the holding company of Granjewel, was harmed, as a third party beneficiary, by E & W's actions. Jewelcor alleged that it had relied on E & W's audit of Granjewel in its financial decision making and as a result of this reliance on the inaccurate audit, Jewelcor allegedly lost millions of dollars.

The relationship of Jewelcor with Granjewel is based on the following history: in October 1972, Jewelcor, a company in the catalog jewelry business, entered into a joint venture agreement with W.T. Grant (referred to herein as "Grant"),

a retail chain store operation, to form Granjewel, a corporation that would operate a chain of retail catalog showrooms. Jewelcor and Grant operated Granjewel under their agreement until September 1975, when their joint venture was terminated and Granjewel became a wholly-owned subsidiary of Grant. Jewelcor subsequently purchased, from Grant, Granjewel's stock, making Granjewel a wholly-owned subsidiary of Jewelcor. Shortly thereafter this suit was filed. The claims in this case relate to E & W's audit of Granjewel's financial statements for the year ending January 31, 1974 (referred to herein as "1974 audit").

On March 14, 1984 the jury, by means of special interrogatories, rendered its verdict in favor of E & W and against Granjewel and Jewelcor. On March 22, 1984 appellees filed a Motion for New Trial. After receiving oral argument, the motions court[1] granted appellees' motion citing six separate errors committed at trial. This appeal from the grant of a new trial by E & W followed.

Appellants have raised six issues on appeal. We will address each claim with the understanding that, in reviewing an order granting a new trial, we must examine all the evidence presented at trial "to determine whether the verdict was arbitrary or capricious or whether it was against the weight of the evidence, or whether there was clearly error of law or palpable abuse of discretion in the rulings of the court below." *Gonzalez v. United States Steel Corp.*, 248 Pa.Super. 95, 108, 374 A.2d 1334, 1341 (1977), *aff'd*, 484 Pa. 277, 398 A.2d 1378 (1979). *See also, Carnicelli v. Bartram*, 289 Pa.Super. 424, 433 A.2d 878 (1981); *Sindler v. Goldman*, 256 Pa.Super. 417, 389 A.2d 1192 (1978).

## I.

■ The first claim to be addressed is whether the motions court erred in finding that the trial court had erred in allowing E & W to call an expert witness who contradicted testimony by former E & W employees who had been called

1. A second judge replaced the trial judge for the purpose of hearing the Motion for New Trial.

to testify by E & W. The motions court concluded that the testimony by E & W's former employees constituted judicial admissions which could not be subsequently contradicted by another witness called by the defense.

 A judicial admission is an express waiver made in court or preparatory to trial by a party or his attorney, conceding for the purposes of the trial, the truth of the admission. It has the effect of a confessory pleading, in that the fact is thereafter to be taken for granted, so that the opposing party need offer no evidence to prove it and the party by whom the statement was made is not allowed to disprove it. *See* 9 Wigmore, *Evidence* § 2588 (Chadbourn Rev.1981). It is axiomatic that a judicial admission cannot be contradicted by the party that made it. *See Tops Apparel Mfg. Co. v. Rothman*, 430 Pa. 583, 244 A.2d 436 (1968); 9 Wigmore, *supra*, at § 2590 ("The vital feature of a judicial admission is universally conceded to be its *conclusiveness* upon the party making it, i.e., the prohibition of any further dispute of the fact by him and of any use of evidence to disprove or contradict it." (emphasis in original)). As stated in *Tops*, "Pennsylvania has followed this rule since *Wills v. Kane*, 2 Grant 60, 63 (Pa.1853), where the court insisted: 'Where a man alleges a fact in a court of justice, for his advantage, he shall not be allowed to contradict it afterwards. It is against good morals to permit such double dealing in the administration of justice.' " *Tops*, 430 Pa. at 587–88 n. 8, 244 A.2d at 438 n. 8.

At trial, E & W called as witnesses Mr. Krauss and Mr. Pincus, both former employees of E & W. Each witness admitted to errors in the 1974 financial statements amounting to $775,000.00. The motions judge concluded that the witnesses' testimony constituted judicial admissions by E & W and that the trial court erred in permitting E & W's subsequent expert witnesses to contradict those admissions.

E & W contends that the testimony of a former employee does not constitute a judicial admission and that the trial court did not err in permitting an expert witness offered by E & W to contradict the former employees' testimony on

the same subject. Therefore, E & W contends, the motions court erred in granting a new trial on this issue.

It is clear that the testimony of Mr. Krauss could not have constituted a judicial admission because Mr. Krauss was a nonparty witness whose testimony could not bind E & W. At the time Mr. Krauss was called to the stand, his employment relationship with E & W had been severed for well over two years. It is black letter law that "the testimony of one who is merely called as a witness for a party but who does not stand in privity with him may never be considered an admission by the party." P.L.E. Evidence § 155; *McDermott v. Hoffman,* 70 Pa. 31, 19 P.L.J. 133 (1871). Since Mr. Krauss was no longer employed by E & W, he was not in privity with E & W and his testimony did not constitute a judicial admission.[2]

We further find that the testimony of both Krauss and Pincus did not constitute judicial admissions as their testimony was not advantageous to E & W. It was uncontested at trial that in 1975 a Granjewel employee discovered what he suspected to be errors in the 1974 audit. He brought this information to the attention of E & W and, in fact, E & W's 1975 audit appears to show the fact of error in the 1974 audit. At trial, Krauss and Pincus acknowledged that errors had become apparent in 1975. However, neither admitted that E & W had been negligent in the conduct of the 1974 audit. Rather, they each offered an explanation for the apparent errors.

A principle element of a "judicial admission" is that the fact has been admitted for the advantage of the admitting party. The admissions here were only an acknowledgement of the fact that errors were detected in the 1974 audit. E & W did not contest that fact. Its defense was that the errors were caused by Granjewel's own negligence. The testimony by E & W's experts explained the source of the discrepancies in the 1974 audit and provided a factual basis for E &

2. Subsequent to the 1974 and 1975 audits, Mr. Pincus became a partner of E & W and apparently continued in such capacity at the time of trial.

W's claim that the errors were a result of Granjewel's negligence. The testimony by Krauss and Pincus was not the type of unequivocal testimony necessary to be considered a conclusive judicial admission and does not consist of the kind of "double dealing" against which this rule of evidence was intended to protect.[3]

In accordance with the foregoing, we find that the motions court erred in holding that the testimony of Krauss and Pincus consisted of judicial admissions which could not be explained or contradicted by further defense testimony. The trial court was correct when it permitted E & W to call an expert witness to contradict or explain that testimony. Therefore, a new trial is not warranted on this basis.

## II.

█ E & W next contends that the motions court erred in concluding that Thomas Mulea, a juror, may have tainted the jury's deliberations by failing to disclose his prior adversarial relationship with appellees' counsel.

Objection to the presence of an individual juror cannot be raised "after the jury has been sworn except in those cases where a defendant has been intentionally misled or deceived by the juror or the opposite party." *Commonwealth v. Aljoe*, 420 Pa. 198, 205, 216 A.2d 50, 54 (1966) (citations omitted). *See also, Commonwealth ex rel. Fletcher v. Cavell*, 395 Pa. 134, 149 A.2d 434 (1959), *cert. denied*, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 85 (1959).

During *voir dire*, Mulea failed to disclose that he had been a plaintiff in an equity action in which two of the defendants had been represented by a member of a firm representing appellees in the case *sub judice* and that he had been a defendant in a related action in which judgment had been entered against him shortly prior to the commencement of the trial in the instant matter below. The

---

3. We note a concomitant rule of evidence which supports our conclusion as to this issue. That is, a party, whose admissions have been offered against him, may offer any evidence which serves as an explanation for his former assertion of what he now denies to be the fact. *See* 4 Wigmore, *Evidence* § 1050.

equity action involved a stockholders' dispute in a company formed and partially owned by Mulea. The later action involved judgment being entered against him on a loan guaranteed by the Small Business Administration.

Appellees Jewelcor and Granjewel aver that this nondisclosure was intentional and prejudiced their right to an unbiased jury. E & W asserts that the nondisclosure was inadvertent and, moreover, that appellees' counsel knew at the time of *voir dire* that Mulea had been a plaintiff in the previously mentioned equity litigation. Thus, E & W contends, since appellees' counsel had knowledge of Mulea's background during *voir dire,* appellees' right to an unbiased jury was not prejudiced and a new trial should not have been granted on this basis.

There is ample evidence to support E & W's contention that appellees' counsel knew, during *voir dire,* of Mr. Mulea's prior adversarial position. First, there was an index card which appellees' counsel used during *voir dire* which referred to Mulea's prior suit. Second, there was a memorandum sent to appellees' co-counsel from his partner which informed co-counsel of Mulea's possible adverse interest. Finally, appellees admit they had had knowledge of the prior equity action during *voir dire* in their brief on appeal.

We cannot permit appellees to raise an objection after trial to an issue which should have been raised during *voir dire.* "Having known of the possible disqualification of a juror and gambled on the verdict or any result which might follow, appellant cannot now complain." *Morrissey v. Commonwealth, Department of Highways,* 440 Pa. 71, 79, 269 A.2d 866, 870 (1970) (*quoting Cohen v. Redevelopment Authority,* 425 Pa. 441, 443, 229 A.2d 744, 745 (1967)).

Appellees assert that they were deceived by Mulea's nondisclosure and that even had they known of the prior equity litigation, they were not aware of a related action which resulted in a confession of judgment against Mr. Mulea just two weeks before *voir dire* commenced. Appellees aver that had they known of that most recent confes-

sion of judgment, they "would not have permitted him to become part of the jury because of the bias he may have acquired against any plaintiff because of this summary procedure." We cannot allow this technical claim of non-information by the appellees to be used to set aside a long and thorough trial. Both actions involving Mulea arose out of the same series of transactions. Appellees had full knowledge of Mulea's involvement with the legal system. The argument they use with regard to the confession of judgment would have applied with equal force to his involvement in the equity action. Appellees made an informed decision during *voir dire* not to challenge Mulea on this basis and we will not now let them raise this claim as a last ditch effort to retry the case they failed to prove the first time around. Appellees' claim that they were "deceived" by these factors rings hollow.

Therefore, we conclude it was error for the motions court to grant a new trial on the basis that a juror withheld information during *voir dire*.

## III.

■ Another reason given by the motions court in support of its order for a new trial was its conclusion that the jury answered more interrogatories than were necessary which evidenced jury confusion.

It is clear from the answers to special interrogatories that the jury did consider and answer questions which were made moot by previous answers. However, as we stated in *Daley v. John Wanamaker, Inc.,* 317 Pa.Super. 348, 464 A.2d 355, (1983):

> ... if the verdict is supported by evidence, it must be permitted to stand where there is nothing to suggest that the jury was in any way guided by partiality, prejudice, mistake or corruption. *Stoughton v. Kinzey,* 299 Pa.Super. 499, 445 A.2d 1240 (1982). Therefore, it is the duty of the court to enforce the jury's verdict unless the circumstances cry out for judicial interference. *Prather*

*v. H–K Corp.,* 282 Pa.Super. 556, 423 A.2d 385 (1980); *Stoughton, supra.*

*Id.,* 317 Pa.Superior Ct. at 352, 464 A.2d at 358.[4]

Although the jury did answer questions made moot by previous questions, the answers to these moot questions were not inconsistent with the previous answers. The pertinent interrogatories are as follows:

### *Granjewel v. Ernst & Whinney*

3. Was Ernst & Whinney negligent in the performance of its audit of the Granjewel financial statements for fiscal year ended January 31, 1974?

 Yes 2 No 10

If your answer to Interrogatory No. 3 is "Yes", proceed to Interrogatory No. 4; if your answer to Interrogatory No. 3 i[s] "No", then do not answer any of the following Interrogatories regarding the claims of Granjewel?

4. Was Ernst & Whinney's negligence the legal cause of the damages suffered by Granjewel?

 Yes 0 No 12

If your answer to Interrogatory No. 4 is "Yes", proceed to Interrogatory No. 5; if your answer is "No", then do not answer any of the following Interrogatories concerning the claims of Granjewel.

5. Was Granjewel contributorily negligent with respect to the audit of the Granjewel financial statements for fiscal year ended January 31, 1974?

 Yes 12 No 0

If your answer to Interrogatory No. 5 is "Yes", then proceed to Interrogatory No. 6. If your answer to Interrogatory 5 is "No", what is the amount of damages suffered by Granjewel?

$_____

6. Do you find that Ernst & Whinney was grossly negligent to Jewelcor in the performance of its audit of

---

4. The motions court did specifically conclude that the record reflects testimony on material issues which was conflicting and but was sufficient to support a verdict for either of the parties.

the Granjewel financial statements for fiscal year ended January 31, 1974?

Yes 0 No 12

*Jewelcor Inc. v. Ernst & Whinney*

3. Do you find that Ernst & Whinney was negligent to Jewelcor in the performance of its audit of Granjewel's financial statements for fiscal year ended January 31, 1974?

Yes 2 No 10

If your answer to Interrogatory No. 3 is "Yes", then proceed to Interrogatory No. 4; if your answer to Interrogatory No. 3 is "No", then do not answer any of the following Interrogatories regarding the claims of Jewelcor.

4. Was the negligence of Ernst & Whinney the legal cause of the damages suffered by Jewelcor?

Yes____ No____

If your answer to Interrogatory No. 4 is "Yes", proceed to Interrogatory No. 5; if your answer to Interrogatory No. 4 is "No", then do not answer any of the following Interrogatories regarding the claims of Jewelcor.

5. Was Jewelcor contributorily negligent with respect to the audit of Granjewel financial statements for fiscal year ended January 31, 1974?

Yes 12 No 0

If your answer to Interrogatory No. 5 is "Yes", then proceed to Interrogatory No. 6; if your answer to Interrogatory No. 5 is "No", what is the amount of the damages suffered by Jewelcor?

$_____

6. Do you find that Ernst & Whinney was grossly negligent to Jewelcor in the performance of its audit of the Granjewel financial statements for fiscal year ended January 31, 1974?

Yes 0 No 12

If your answer to Interrogatory No. 6 is "Yes", then proceed to Interrogatory No. 7; if your answer to Inter-

rogatory No. 6 is "No", then do not answer any of the following Interrogatories regarding the claims of Jewelcor.

7. Was the gross negligence of Ernst & Whinney the legal cause of the damages suffered by Jewelcor?

Yes 0 No 12

The answers to all of the interrogatories were consistently in favor of E & W. By answering more questions than needed in support of their decision to exonerate E & W, the jury did not commit the type of egregious error which would cry out for judicial interference. The jury simply answered more questions than were necessary. It was, as E & W phrased it, "mere surplusage".

Therefore, it was error for the motions court to grant a new trial on the basis of jury confusion.

## IV.

█ The fourth basis upon which the motions court concluded that a new trial should be had in this case was its conclusion that the trial court had erred in precluding testimony by one of appellees' expert witnesses proffered on rebuttal.

E & W called Dr. Davidson, an expert witness, to testify on the issue of damages. Desiring to rebut this testimony, appellees offered their own expert witness, Dr. Rachman. The trial court excluded Rachman's testimony by sustaining E & W's objection.

█ It is within the discretion of the trial court to exclude the testimony of expert witnesses. *Houston v. Canon Bowl, Inc.*, 443 Pa. 383, 278 A.2d 908 (1971); *Walasavage v. Marinelli*, 334 Pa.Super. 396, 483 A.2d 509 (1984). It is also within the discretion of the trial judge to deny a request to offer rebuttal evidence. *Municipal Publications, Inc., v. Snyder*, 322 Pa.Super. 464, 469 A.2d 1084 (1983).

The facts are undisputed that only after E & W presented its case in chief did it receive notice of appellees' intention

to call Rachman for rebuttal even though he had been present during the trial and had been retained by appellees prior to trial. Appellees notified E & W that they intended to call Rachman as a rebuttal witness three days prior to the day he was offered as a witness. E & W objected, contending that this notice failed to afford it sufficient time to prepare for the testimony. Further, E & W argued that appellees had been subject to continuing interrogatories requiring them to supplement their answers with regard to any expert witness expected to testify which they had failed to answer until the last minute.

▇ Considering the circumstances, especially the short period of time in which E & W had to prepare for cross-examination, we cannot find that the trial court abused its discretion in excluding Rachman's testimony. We do not agree with the motions court conclusion that the trial court abused its discretion in precluding Rachman's testimony.[5]

## V.

E & W next argues that the motions court erred in concluding that certain of the trial court's jury instructions were incorrect and required a new trial.

▇ In their motion for new trial, appellees alleged, *inter alia*, that the trial court had erred in its charge to the jury by instructing on the contributory negligence of Granjewel and Jewelcor; instructing on E & W's liability to Jewelcor as a third party beneficiary to the contract between E & W and Granjewel; and in charging that E & W could be found liable to Jewelcor for negligence only if the jury determined that E & W intended, at the commencement of the audit, that Jewelcor would rely upon the report.

In determining the standard to be applied to determine an accountant's liability, the motions court properly cited and

5. This conclusion is further supported by the fact that Dr. Rachman was called to testify on the issue of damages. As the jury ultimately concluded that E & W was not negligent in its performance of the Granjewel audit, any erroneous instruction on the issue of damages is moot and certainly cannot be the basis for the grant of a new trial.

relied upon *National Surety Corp. v. Lybrand*, 256 App. Div. 226, 9 N.Y.S.2d 554 (1939), which states the following principles applicable to accountants' liability cases and which sets forth the appropriate standard for utilizing the defense of contributory negligence in accounting litigation:

> "We are ... not prepared to admit that accountants are immune from the consequences of their negligence because those who employ them have conducted their own business negligently.... Accountants, as you know, are commonly employed for the very purpose of detecting defalcations which the employer's negligence has made possible. Accordingly, we see no reason to hold that the accountant is not liable to his employer in such cases. Negligence of the employer is a defense only when it contributed to the accountant's failure to perform his contract and to report the truth...."
>
> \* \* \* \* \* \*
>
> [B]y way of illustration, if it were found that the members of the [employing firm] had been negligent in connection with the transfer of funds which occurred at about the time of each audit and that such negligence contributed to the [auditors'] false reports it would be a defense to the action for it could then be said that the [auditors'] failure to perform their contracts were attributable, in part at least, to the negligent conduct of the firm.

*Id.* at 235–36, 9 N.Y.S.2d at 563.

The motions court concluded that the issue of Granjewel's contributory negligence was properly placed before the jury because E & W had presented evidence which showed that Granjewel's internal inventory had been miscalculated by Granjewel employees and because there were questions of fact concerning Granjewel's officer's alleged discovery of errors in the internal inventory and his failure to inform E & W of those errors in a timely manner.

Where contributory negligence is an issue in a case, clear instructions are required; it is incumbent upon the trial judge to explain to the jury what facts constitute

contributory negligence under the circumstances of the case. *Commonwealth of Pennsylvania, Department of Highways v. Eldridge*, 408 Pa. 391, 184 A.2d 488 (1962). In addition to instructions pertinent to the burden of proof relative to contributory negligence, the trial court's charge provided as follows:

> Contributory negligence of a Plaintiff is a defense only when it contributed to the Defendants' failure to perform its contract and report the truth. If you find that the Plaintiffs were contributorily negligent, then you must determine whether their conduct was a substantial factor in bringing about their loss. If you answer in the affirmative on both questions, that is, if you find the Plaintiffs were negligent and that their conduct was a substantial factor in causing their losses, your verdict must be for the Defendant on the negligence theory.

This instruction appears to conform to Pennsylvania Suggested Standard Jury Instructions (Civil) 3.03, Pa.SSJI (Civ) 3.03, and with the principles of New York law. *See National Surety, supra,* and *Shapiro v. Glekel,* 380 F.Supp. 1053 (S.D.N.Y.1974).

Since we are in agreement with the motions court that there were issues of material fact concerning the negligence of Granjewel, the question of whether the possible negligence of Granjewel contributed to E & W's failure to perform the contract and report the truth was properly submitted to the jury.

■ However, the motions court also concluded this evidence would not support a conclusion that Jewelcor had been contributorily negligent and, therefore, that issue had been improperly placed before the jury. The motions court concluded that the contributory negligence instructions failed to distinguish between Jewelcor and Granjewel and the corporations were "lumped" together. Finding that Jewelcor had not participated in any capacity in the audit of Granjewel's inventory for the year 1974, the motions court opined that it was error to charge on the issue of contributory negligence as to Jewelcor. While this may be true,

the error is harmless. Jewelcor's claim against E & W rests on the claim that E & W negligently conducted the 1974 audit for Granjewel and the jury clearly determined that E & W had not been negligent in that audit. *See* Answers to Interrogatories, *infra* at 11–12. *Accord: Whitton v. H.A. Gable Co.*, 331 Pa. 429, 200 A. 644 (1938) ("[A]s the jury found no negligence on the part of appellee [defendant below] the question of contributory negligence passes out of the case, and any error in the charge in this respect would not have been prejudicial." *Id.*, 331 Pa. at 432, 200 A. at 646.). *See also, Dean v. Trembley*, 185 Pa.Super. 50, 137 A.2d 880 (1958) (same rationale). Therefore, this is no basis upon which to grant a new trial.

## VI.

 The final question for us to consider with regard to the jury instructions is whether the trial court erred in its instructions as to E & W's duty toward Jewelcor Inc., as a third party beneficiary, to perform the audit with due care. As we stated before, Jewelcor's claim against E & W rests on the claim that E & W breached its contract with Granjewel by negligently conducting the 1974 audit and the jury, based on accurate jury instructions and interrogatories, clearly determined that E & W had not been negligent in that audit. It is undisputed that the rights of an alleged third party beneficiary may arise no higher than the rights of the parties to the contract and that they are vulnerable to the same limitations which may be asserted between the promisor and the promisee. *Williams v. Paxson Coal Company*, 346 Pa. 468, 31 A.2d 69 (1943); *Zimnisky v. Zimnisky*, 210 Pa.Super. 266, 231 A.2d 904 (1967). As we previously concluded, this claim of error is rendered moot by the fact that E & W was found to be not negligent as to Granjewel in the conduct of the 1974 audit.

 Pennsylvania courts consistently decline to review allegations or error which have been rendered moot or harmless due to the jury's special findings or verdict. *See, Price v. Yellow Cab Co.*, 443 Pa. 56, 60–61, 278 A.2d 161

(1971); *Dean v. Trembley, supra.* We agree with appellant's argument that a new trial is not necessary to correct alleged errors concerning issues that were irrelevant to the jury's verdict.

## CONCLUSION

For the reasons stated herein, the December 19, 1986 order granting plaintiffs'/appellees' motion for a new trial is hereby reversed. Case remanded for reinstatement of jury's verdict. Jurisdiction relinquished.