546 A.2d 665

**Edward DURKIN, James Durkin, Jr. and Herve Filion, Individually and Doing Business as Snow Shoe Farms, Appellants,**

**v.**

**EQUINE CLINICS, INC. and Joseph Deleo.**

Superior Court of Pennsylvania.

Argued Sept. 23, 1987.

Filed Aug. 10, 1988.

560

Lauren Scott, Philadelphia, for appellants.

George J. McConchie, Media, for appellees.

Before CIRILLO, President Judge, and TAMILIA and KELLY, JJ.

CIRILLO, President Judge:

This is an appeal from an order of the Court of Common Pleas of Delaware County denying a motion to remove a compulsory nonsuit against appellants Edward Durkin, James Durkin, and Hervé Filion [referred to collectively as "the Durkins"], who filed suit individually and as Snow Shoe Farms. In so doing, appellants in effect appeal the trial court's decision to grant a motion in limine disallowing certain statements to be introduced as evidence at trial.

This appeal arises out of the death of appellants' standardbred stallion, Josiah, who died, apparently of anaphylactic shock, after receiving a drug dose from appellee Joseph DeLeo, D.V.M. Josiah was stabled at Brandywine Racetrack under the care of Kenneth Seeber, D.V.M., a shareholder and employee of appellee Equine Clinics, Inc. Dr. Seeber had prescribed and was administering a regimen of drugs to the horse which included the enzyme, kymotripsin, brand-name Kymar. Because Dr. Seeber had to be away from the racetrack on August 21st, he left Josiah in

the care of Dr. DeLeo, asking him to carry out the regimen as prescribed. Dr. Seeber received a call at the airport from Dr. DeLeo, also an employee of Equine Clinics, who allegedly informed him that Josiah had died within ten minutes of his administering the drugs.

The Durkins brought suit for damages arising from the death of their horse. The matter went to trial on December 16, 1980. At trial, they argued that the horse's death was caused by the drug Butazolidin which had been administered in twice the recommended dosage. Equine Clinics and Dr. DeLeo, appellees in the case, introduced evidence to show that Butazolidin could not produce an allergic reaction in a horse. The jury returned a verdict for appellees, and the trial judge entered judgment accordingly.

Appellants then appealed to this court. A panel of this court held that the trial court's failure to instruct the jury that Dr. DeLeo's administering Butazolidin in an amount in excess of the manufacturer's recommended dosage was evidence from which the jury could infer that appellees had been negligent. The case was then remanded for a new trial. 313 Pa.Super. 75, 459 A.2d 417.

Before the second trial was to begin, appellees filed a motion in limine to bar admission of a statement made by Dr. Seeber to the Durkins the day following the death of their horse, indicating that the horse had died from a drug overdose, and a taped statement that Dr. Seeber had made to an insurance carrier investigator in February of 1972 while he was an employee and shareholder of Equine Clinics. That taped statement included Dr. Seeber's acknowledgment that he had instructed Dr. DeLeo to administer the same drug regimen to Josiah that he had been administering, that the prescribed regimen included Kymar for lameness in the left hind leg, and that the enzyme could cause anaphylactic shock in a horse. He also said in his statement that Dr. DeLeo told him in the phone call that the horse had died of anaphylactic shock immediately after he had administered the drug regimen which had included Kymar. Dr. Seeber had testified to the contents of the taped statement

at the first trial, and the statement was introduced into evidence by appellees.

The motion in limine was granted after argument, and the matter proceeded to trial. The trial judge entered a compulsory nonsuit against appellants; their motion to remove the nonsuit was denied. They then appealed to this court.

The Durkins argue on appeal that the trial court erred in refusing to remove the compulsory nonsuit because Dr. Seeber's statements were admissible and therefore appellants had presented sufficient evidence to go to the jury. Appellants further argue that Dr. Seeber's statements were admissible because they fall under the vicarious admission exception to the hearsay rule, the judicial admission exception to the hearsay rule, and the prior inconsistent statement exception recently articulated by our supreme court in *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986). They also contend that the trial court erred in refusing to admit the statements on the basis that those statements were ostensibly based on inadmissible hearsay—Dr. DeLeo's supposed statements to Dr. Seeber that he did in fact administer Kymar to the horse.

 On appeal from an order denying a motion to remove a compulsory nonsuit, we must consider the record to determine whether the trial court properly applied the well-established standard for entry of a compulsory nonsuit. A nonsuit can only be entered in clear cases, and the plaintiff must be given the benefit of all evidence in his favor along with all favorable inferences that may be drawn from it. Any conflict in the evidence must be resolved in his favor. If a jury, viewing the evidence in the light most favorable to the plaintiff, could not reasonably determine that all the elements of the cause of action have been established, then the nonsuit is proper. *Kuriger v. Cramer*, 345 Pa.Super. 595, 602, 498 A.2d 1331, 1334–35 (1985). In this case, we must determine whether the trial court erred in holding the evidence in question inadmissible. We will reverse the ruling of the trial court only for an abuse of discretion. *Concorde Investments, Inc. v. Gallagher*, 345

Pa.Super. 49, 56, 497 A.2d 637, 641 (1985). Should we find that the evidence was improperly excluded, the order granting the nonsuit would have to be reversed.

The Durkins argue that under the recent supreme court decision of *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986), the insurance statement given by Dr. Seeber should be permitted into evidence. They argue that Dr. Seeber's testimony at the first trial was contradictory to the statement that he had given to the insurance company some six months after Josiah's death, and that if he is called as a witness at the second trial, his testimony will continue to be inconsistent.

In *Brady*, the supreme court jettisoned an entire area of evidentiary law, and attempted to follow commentators perhaps less well-experienced in trial advocacy than the justices of the appellate courts of this Commonwealth. The court held that where a declarant is a witness at a judicial proceeding and is available for cross-examination, that declarant's out of court statements may be admitted as substantive evidence for the truth of the matters asserted in them. *Brady*, 510 Pa. at 131, 507 A.2d at 70. *Brady* is now the law of this Commonwealth, although it should be noted that not even the Federal Rules of Evidence have taken as liberal a stance; under the Federal Rules, the prior inconsistent statement must have been given under oath before it can be accepted as substantive evidence. *See* F.R.E. 801(d)(1)(A).

■ In any event, we find that *Brady* is not applicable in this case. We note that the holding of the supreme court reads "*otherwise admissible* prior inconsistent statements ... may be used as substantive evidence." *Brady*, 510 Pa. at 131, 507 A.2d at 70. Because we find that the facts in *Brady* differ substantially from those confronting us, and because we do not find that the insurance statement in question would be otherwise admissible considering the double hearsay with which it is riddled, we find that the statement is not admissible under *Brady*.

In *Brady*, a witness called by the Commonwealth recanted a previous statement made to police officers that she had been with Brady, that their car had been wrecked in a ditch, and that she and Brady had walked from their car to a plant where Brady had scuffled with and then stabbed a security guard. On direct examination she denied that they had entered the plant. The Commonwealth then cross-examined the witness using her prior inconsistent statement after the court ruled that she was a hostile witness. It was on these facts, facts which the trial court had called "the classic case to illustrate why the prior statement should be admitted substantively," *id.*, that the supreme court declared that prior inconsistent statements could in fact be introduced for the truth of the matter asserted.

The benefits of allowing the statement in as substantive evidence here are not so clear. At the first trial, Dr. Seeber testified on direct examination that he told Dr. DeLeo to give the horse a regimen of drugs which did not include Kymar, that he asked Dr. DeLeo on the phone what he had given the horse, and that Dr. DeLeo responded he had treated the horse as Dr. Seeber instructed him. His statement to the insurance company states, however, that he asked Dr. DeLeo to treat the horse, that he told Dr. DeLeo what the horse was to have, and that on the phone Dr. DeLeo told him the horse had died "immediately after the administration of this regimen consisting of aziumycin, fenylbutazone and Karmar [sic]." The purpose for which the appellants wish to introduce the statement into substantive evidence is not for proof of what Dr. Seeber himself did or did not do. He is not a party to this case. They are concerned with the statements which indicate that Dr. DeLeo, who is a party, administered Kymar contrary to the position he has taken to this point.

Dr. Seeber's statement that Dr. DeLeo had administered Kymar is not "otherwise admissible." This is a blatant instance of hearsay within hearsay; fit Dr. DeLeo's alleged statements under no exception to the hearsay rule. The situation here is more akin to the case of *Commonwealth v.*

*Baez,* 494 Pa. 388, 431 A.2d 909 (1981) than to *Commonwealth v. Brady, supra.* In *Baez,* the Commonwealth attempted to cross-examine the defendant with a statement supposedly taken from a friend of his, one Reinaldo Castillo. Because the statements of Castillo were merely hearsay, and not adopted by Baez, the witness whose credibility was to be impeached, they were not permissible impeachment evidence. *Id.,* 494 Pa. at 394, 431 A.2d at 912. In this case, should Seeber be called by the Durkins, he would clearly authenticate his statement. Ostensibly, he is the witness whose testimony is being impeached. It is also probable that, unlike the *Baez* case, Seeber would be extensively questioned concerning his statement. The substantive evidence, however, does not in any way indicate what he himself did or did not say. His statements not only redounds against Dr. DeLeo, but allows into evidence hearsay statements about DeLeo that he himself denied making. Allowing the statement in for substantive evidence would allow in evidence that DeLeo told him that he, DeLeo, administered the drug. As the court stated in *Baez,* quoting the eminent Justice Musmanno:

"The primary object of a trial in American courts is to bring to the tribunal, which is passing on the dispute involved, those persons who know of their own knowledge the facts to which they testify. If it were not for this absolute sine qua non, trials could be conducted on paper without the presence of a single flesh and blood witness. But with such a pen-and-ink procedure, there would be no opportunity to check on testimonial defects such as fallacious memory, limited observation, purposeful distortions, and outright fabrication. The great engine of cross-examination would lie unused while error and perjury would travel untrammeledly to an unreliable and often-tainted judgment. Accordingly, nothing is more adamantly established in American trial procedure than that no one may testify to what someone else told him. He may only relate what is within his own memory brought to him by the couriers of his own senses." (Citation omitted). The statement in question here is

precisely the type of unreliable out-of-court declaration the hearsay rule was designed to exclude. Indeed, the problems associated with hearsay are multiplied here, as we are presented with an extrajudicial written statement which incorporates an extrajudicial oral statement.

*Id.*, 494 Pa. at 395–396, 431 A.2d at 913. Unlike the situation in the *Brady* case, the matters contained in Dr. Seeber's statement for which that statement is offered as proof are themselves inadmissible hearsay, fitting within no exception to the hearsay rule.

■ The Durkins also argue that Dr. DeLeo's statements are admissible into evidence even if they are hearsay within hearsay, because they are the admissions of a party opponent, and in that way fit into an exception of the hearsay rule [1]. We cannot accept this argument, for reasons we will fully discuss later in this opinion. Here we will merely say that although the statements made by Dr. DeLeo may be admissible against him as party admissions, they cannot be held admissible against Equine Classics, also a party in this action. There is no evidence to indicate that Dr. DeLeo was authorized to make such an admission for Equine Classics. *See Murray v. Siegal*, 413 Pa. 23, 31, 195 A.2d 790, 794 (1963); *Yubas v. Makransky*, 300 Pa. 507, 511, 150 A. 900, 902 (1930). To attempt to caution the jury to use those statements only against DeLeo, and not consider them when determining the liability of Equine Classics would be to attempt the impossible. The liability of both are inextricably intertwined. For this reason, we would hold that the statements allegedly made by Dr. DeLeo would be too

1. Appellants also argue that the statements made by Dr. DeLeo fall within the present sense exception to the hearsay rule. We note that for a statement to fall within the present sense impression exception to the hearsay rule, the supreme court has ruled that an element of contemporaneity must be present. *Commonwealth v. Peterkin*, 511 Pa. 299, 313, 513 A.2d 373, 379 (1986), *cert. denied*, 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987); *Commonwealth v. Coleman*, 458 Pa. 112, 117, 326 A.2d 387, 389 (1974). "Relative immediacy of the declaration insures that there will have been little opportunity for reflection or calculated misstatement." *Coleman*, 458 Pa. at 117, 326 A.2d at 389. We find that from the record before us, the element of contemporaneousness was lacking in this case.

prejudicial to Equine Classics to be allowed into the case. *Cf. Baez,* 494 Pa. at 395, 431 A.2d at 913.

The Durkins next argue that Dr. Seeber's testimony at the first trial, including the insurance statement, is admissible under the judicial admission exception to the hearsay rule. The Durkins argue that since Equine Clinics called Dr. Seeber as a witness at the first trial, they have vouched for his credibility. Therefore, his statements must be considered as Equine Clinics' admissions, and, thus, properly admissible under the judicial admission exception. We find that merely because Dr. Seeber's credibility might have been vouched for by Equine Clinics at the first trial by its decision to call him as a witness, his ability to admit certain facts on behalf of Equine Clinics and Dr. DeLeo was not, and that, in any case, his testimony lacked the clearness and unequivocality which characterize a judicial admission.

·A judicial admission is a device by which a trial may be expedited through the elimination of the need for proof of certain facts which are not disputed:

> Judicial admissions are not evidence at all, but are formal pleadings in the case, or stipulations, oral or written, by a party or his counsel which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. Thus the judicial admission, unless it should be allowed by the court to be withdrawn, is conclusive in the case, whereas the evidential admission is not conclusive, but is always subject to be contradicted or explained.

Packel & Poulin, *Pennsylvania Evidence,* section 805.5 at p. 666 (1st ed. 1987) (quoting McCormick, *Evidence* § 262 at (3rd ed. 1984) (citations omitted)). *See also* 4 Wigmore, *Evidence* § 1059 at 27 (Chadbourn rev. 1972). The types of facts contemplated as being admitted through the judicial admissions exception are, for example, pleadings, a party's failure to respond as required by the pleading rules, a party's responses or failure to respond to requests for admissions, or a party's answers to interrogatories. *Tops Apparel Manufacturing Co. v. Rothman,* 430 Pa. 583, 587,

244 A.2d 436, 438 (1968); *see also* Packel & Poulin, *supra,* § 805.5 at 667. The testimony of a party at a prior trial or deposition does not always have the force of a judicial admission. In fact, commentators are reluctant to label it as such. Some have characterized it as an "informal" judicial admission, 29 Am.Jur. § 615 at 669 (2nd ed. 1967), or a quasi-admission, Wigmore, *supra,* § 1058 at 26. Leonard Packel and Anne Poulin, in their recent treatise on Pennsylvania evidence, state that testimony of a party may *sometimes* be a judicial admission. Packel & Poulin, *supra,* § 805.1 at 656. The difference becomes important because facts testified to by a party may in some instances be explained, whereas a true judicial admission may not be contradicted by the party against whom it is offered. Packel & Poulin, *supra,* § 805.5 at 667.

Because the testimony by a party at a prior trial or deposition does not necessarily serve the procedural purpose of eliminating the need for proof of the facts to which it attests in the same way that a fact admitted in a stipulation does, only testimony which is unequivocal and clear will be treated as a judicial admission:

> The rule that a plaintiff is bound by his own testimony "has been limited to situations in which a party's testimony amounts to such a stipulation or waiver as to have the force of a judicial admission, and has been said to apply only if a party's testimony is clear and unequivocal and not when it is inconsistent and conflicting."

*Jerominski v. Fowler, Dick & Walker,* 372 Pa. 291, 294, 93 A.2d 433, 435 (1953); *see also Greater Valley Terminal Corp. v. Goodman,* 405 Pa. 605, 608, 176 A.2d 408, 410 (1962) (where witness' testimony is not clear and unequivocal, but is contradictory and confusing, it will not be treated as conclusive judicial admission). *See, e.g., Thomas v. Hutchinson,* 442 Pa. 118, 275 A.2d 23 (1971) (deposition testimony that did not contain clear statement of agency was not judicial admission).

■ The judicial admissions exception contemplates admitting the testimony of *parties,* not mere third party

witnesses. The definition of "admissions" in Black's Law Dictionary reads:

> Confessions, concessions or voluntary acknowledgments *made by a party* of the existence of certain facts. More accurately regarded, they are statements by a party, *or someone identified with him in legal interest,* of the existence of a fact which is relevant to the cause of his adversary.

Black's Law Dictionary 44 (5th ed. 1979) (emphasis added). The statements of a third person may be considered the admissions of a party if they are bound to that party because of agency, joint or common interest, or having vouched for their credibility and impliedly asserted that fact by calling the third person as a witness. *Zank v. West Penn Power Co.,* 169 Pa.Super. 164, 166–167, 82 A.2d 554, 555 (1951). *Cf. McDermott v. Hoffman,* 70 Pa. 31 (1871).

In the instant case, the Durkins argue that since Equine Clinics and Dr. DeLeo called Dr. Seeber as a witness in the first trial of this matter, they have impliedly vouched for his credibility. This, they argue, allows them to introduce into evidence Dr. Seeber's testimony from that trial, as well as the insurance statement which was utilized during both direct examination and cross-examination of Dr. Seeber. We note in passing that Dr. Seeber was neither an agent of Equine Clinics at the time of the trial, nor was he in any way linked by legal interest, as he had left their employ and was no longer a stockholder at the time of the trial. *Corr v. Jewelcor Jewelers,* 373 Pa.Super. 536, 541–543, 542 A.2d 72, 75 (1988). He was never either in privity with or an agent of DeLeo.

■ While it is true that the appellees did in fact call Dr. Seeber as a witness in the first trial, we do not agree with the Durkins that this enables them to introduce his testimony or the insurance statement as judicial admissions:

> It would be perilous, indeed, to any party to produce and examine a witness in court, if all that he might said could afterwards be used in evidence against him as an admission. He admits, indeed, by producing him that he is a

credible witness but only *pro hac vice*, so far as that case is concerned. He does not admit that everything he says is true either in that or any other proceeding. A party in the same suit may give evidence which contradicts his own witness or shows that he was mistaken.... [I]f a party or his counsel in his defence make a concession of a fact within his own knowledge, which is pertinent in another issue with another plaintiff, the record of the first suit as introductory to evidence of the concession, and the concession itself ... are good evidence for the new plaintiff.... [A] record between other parties may be admissible in evidence whenever it contains a solemn admission or judicial declaration by any of such parties in regard to the existence of any particular fact. But this certainly falls far short of holding that what is declared by a third person, produced as a witness, is to be treated and received as an admission by the party producing him.

*McDermott*, 70 Pa. at 52–53. We share the concerns of the supreme court outlined above, and find that regardless of the fact that the appellees called Dr. Seeber as a witness in the first trial, his testimony falls short of what was contemplated by the courts of this Commonwealth in developing the judicial admissions exception to the hearsay rule. Merely by calling a person as a witness, and by, in effect, vouching for his credibility, one does not give that person authority to bind one to facts, or to make admissions.

Accepting a rule that testimony given by a witness constitutes a judicial admission simply because the party has called that witness flies in the face of accepted law in this Commonwealth, and the principles which support it. The rule against impeachment of one's own witness, based on the notion that if a party called a witness he vouched for his credibility and could not attack it, has long been discredited. *See* Packel & Poulin, § 607.3 at 406–407. Further, a party is not bound by the evidence offered by his witnesses, and may contradict it. *Stack v. Wapner*, 244 Pa.Super. 278, 285, 368 A.2d 292, 296 (1976); *Fetterolf v. Yellow Cab Co.*, 139 Pa.Super. 463, 471, 11 A.2d 516, 520 (1940). We must

also note the statutory requirement that the introduction of former testimony is only permitted under the rule against hearsay upon a showing of the witness' unavailability. *See* 42 Pa.C.S. § 5934. Any wholesale application of the general rule that a witness may make an admission for the party who has called him and has thereby vouched for his credibility could only eviscerate the principles of law which have given rise to these well-established tenets, and would emasculate them.

■ We hold, therefore, that in this case, calling Dr. Seeber as a witness was not enough to transform him into a person able to make the admission that Dr. DeLeo gave Kymar to the horse on the day the horse died, particulary on a situation in which Dr. Seeber was unable to make this admission based on any principle of community of interest or an agency relationship.

Further, the testimony in question falls far short of the accepted definition of a judicial admission. Again, a judicial admission removes the necessity for proving facts because a party has, in effect, stipulated to them. Dr. Seeber's testimony was an attempt to explain earlier remarks made in the insurance statement. A reading of the transcript of his testimony makes it clear that Seeber was not testifing to facts in that statement, specifically to whether or not Dr. DeLeo told him he had administered Kymar to the horse, but rather he was attempting to explain its inaccuracies. During his testimony, Dr. Seeber attempted to explain that he had made mistakes concerning the amounts and types of drugs administered to Josiah in his statements to the insurance company, and that these mistakes had occurred because he did not have with him the records of what he had given Josiah when he made the statement. He in no way testified *unequivocally* that Kymar was given to the horse on the day it died, or that Dr. DeLeo told him that he had done so.

In the portion of testimony that appellants attempt to introduce, Dr. Seeber testified that Josiah was on a regimen including Kymar, that he had to leave the racetrack on the

day the horse died, that he requested Dr. DeLeo to administer the regimen prescribed, and that Dr. DeLeo had done so. Nowhere in his testimony did Dr. Seeber state that Dr. DeLeo told him he administered Kymar to the horse. In fact, Dr. Seeber testified that the horse had not had Kymar during the seventy-two hours preceding its death. Nowhere in the offered testimony, other than in the portion of the insurance statement that the Durkins attempted to introduce, is there any reference to what Dr. DeLeo might have said to Dr. Seeber during their telephone conversation on the day the horse died. How such testimony is now to be an incontrovertable admission that Dr. DeLeo did in fact give Josiah Kymar escapes this court. The testimony as it was given cannot be seen to assert the facts in that insurance statement as admissions incontrovertably and conclusively admissible against the appellees [2].

The Durkins next argue that the statements given to the insurance company by Dr. Seeber were admissible into evidence as vicarious admissions of a party. They contend that Dr. Seeber was an agent of Equine Clinics at the time he made the statement to the insurance company, and that he was authorized to do so. Although we are aware of the narrow interpretation of the vicarious admission exception in this Commonwealth, *see Murray v. Siegal,* 413 Pa. 23, 31, 195 A.2d 790, 794 (1963), *Yubas v. Makransky,* 300 Pa. 507, 511, 150 A. 900, 902 (1930), we agree that Dr. Seeber was an agent of Equine Classics at the time he spoke with the insurance company investigator, and that sufficient evidence of authority to speak for his principal was adduced in this case. This, however, does not insure the admission into evidence of Dr. Seeber's statements. While the insurance statement itself fits into a hearsay exception, the statements by Dr. Seeber that Dr. DeLeo told him he had administered the Kymar are also hearsay, and do not slide

2. We also note that Dr. Seeber was allowed to explain his statement to the insurance company at the first trial. It would make no sense for us to hold that that insurance statement was a judicial admission and therefore, could neither be contradicted or explained at the second trial, when that contradiction was permitted at the first one.

as easily into evidence under an exception to the hearsay rule.

The Durkins have attempted to side-step the problem of the hearsay statements of Dr. DeLeo by arguing that they may come into evidence as party admissions. This does not solve the problem. We question whether the insurance statement can be admissible against *Dr. DeLeo*. Clearly, although Dr. Seeber can be said to be an agent of Equine Classics, there is no evidence in the case indicating that he was in fact an *agent of Dr. DeLeo*. Again, the strict construction of the vicarious admission exception in this Commonwealth requires that for a statement to be admissible, the offering party must show that the declarant was an agent *of the party against whom the admission was offered,* and that he had the authority to speak for that party. *Yubas,* 300 Pa. at 511, 150 A. at 902 (emphasis added); *DeFrancesco v. Western Pennsylvania Water Co.,* 329 Pa.Super. 508, 517–18, 478 A.2d 1295, 1300 (1984).

In *DeFrancesco,* this court considered the question of whether statements made by various persons at the scene of a fire were properly admissible into evidence in an attempt to determine who was responsible for an inadequate water supply. Two statements were involved in that case, one made by an unidentified person to the fire chief at the scene of the fire, and one made to one of the appellees, allegedly by an employee of the Water Company. The fire chief testified that a person approached him and identified himself as an employee of the Water Company. He allegedly told the fire chief that the mains were four inches as opposed to eight or twelve inches, and that the water had been turned down because the line was being repaired. The fire chief testified that he had called the fire alarm operator and requested that someone get in touch with the appellant, and that he assumed that the person who approached him had come in response to the operator's call. The chief testified that the man had no papers or uniform, and that he did not see him get out of any of the Water Company's trucks. *DeFrancesco,* 329 Pa.Super. at 516, 478 A.2d at

1299. The trial court permitted the testimony into evidence, holding that it was not hearsay.

The trial court also permitted the testimony of one of the appellees, who stated that an "old Italian fellow" approached him at the scene and said "I guess you think I played a dirty trick on you. We weren't allowed to work overtime." *Id.* The appellee testified that he had seen this person in the Water Company's truck that morning, had seen him in the truck before, and had talked with him and sold him tires. *Id.*

On appeal, an en banc panel of this court reversed the trial court's decision to allow the testimony into evidence. Holding that the testimony offered was hearsay, we noted that the admission of that evidence would not be improper if it fit into any hearsay exception. *Id.* Considering the nature of the vicarious admission rule, we concluded, however, that the testimony had been improperly admitted. "[E]ven if the requirement of agency was proven, there is no indication that either of the declarants had authority to make his declaration." *Id.*, 329 Pa.Superior Ct. at 518, 478 A.2d at 1300. *See also Watkins v. Sharon Eerie, No. 327 Fraternal Order of Eagles*, 423 Pa. 396, 401, 223 A.2d 742, 745 (1966) (woman who had fallen outside lodge could not prove governor, secretary, or officer of lodge were persons who promised to take care of problem, or that those persons had authority to bind lodge); *Adams v. Mackleer*, 239 Pa.Super. 244, 249, 361 A.2d 439, 441 (1976) (appellant-mother's note to owner of bike that lamp did not work and brakes failed was not admission of appellant-son; mother was not son's agent).

■ Similarly, we can find no evidence of agency in the relationship between Dr. Seeber and Dr. DeLeo. Dr. Seeber was a shareholder as well as an employee of Equine Classics; Dr. DeLeo was merely Dr. Seeber's co-employee. Further, there is no evidence that Dr. Seeber was authorized to speak for Dr. DeLeo. It is clear from the cases discussed above that the amount of evidence required to show authority in this Commonwealth is formidable, and

cannot possibly be met here, even if Dr. Seeber were to take the stand. Dr. Seeber was not employed by Dr. DeLeo; again, Dr. DeLeo was only an employee of the corporation. I would hold that if the insurance statement were to be offered into evidence against Equine Classics, it could not be considered against Dr. DeLeo. *Accord Mahlandt v. Wild Canid Research Center,* 588 F.2d 626 (8th Cir.1978).

Once the inadmissibility of the insurance statement against Dr. DeLeo is grasped, the error in the arguments of the appellants becomes obvious. Although the insurance statement itself may be offered as hearsay within an exception *against Equine Classics,* that document contains hearsay statements that Dr. DeLeo allegedly made which must also fit within an exception to the hearsay rule in order to be accepted into evidence. The Durkins would have us label those statements as party admissions because Dr. DeLeo is a party to this action, and allow them into evidence under that exception to the hearsay rule. This is not a wise course of action. It must be remembered that the overall statement made to the insurance company cannot be considered as evidence *against Dr. DeLeo* because it fits no exception as to him. Dr. Seeber is not his agent. How is it possible to admit into evidence statements allegedly made by Dr. DeLeo that are contained within a statement which is not admissible against him? Consider the problems of confusion and prejudice that admission of such evidence would entail. The jury would be called upon to hear evidence of Dr. DeLeo's statements and consider them only against the company. They clearly cannot hold those statements against Dr. DeLeo since the vehicle by which they are introduced is not admissible against him.

Further, it follows that if Dr. Seeber testified to Dr. DeLeo's statements on the stand, they would not be admissible against Equine Classics. They would be admissible as admissions by a party, but not as admissions made by that particular party, that is, Equine Classics. A limiting instruction here, as in the situation outlined above, would be

quite useless. How is the jury to segregate this information?

To fully understand the implications of the situation, we would do well to consider the hearsay rule and the exceptions which confront us—the party admission exception, and the vicarious admission exception. The most frequently cited reason for admitting the party admission into evidence is that it is a natural outgrowth of the adversary system:

> [I]t is too obvious for comment that the party whose declarations are offered against him is in no position to object on the score of lack of confrontation or of lack of opportunity for cross-examination. It seems quite as clear that he ought not be heard to complain that he was not under oath.

Morgan, *Admissions as an Exception to the Hearsay Rule*, 30 Yale L.J. 355, 361 (1921). At least one commentator has argued that this rationale is no longer viable in a modern adversarial setting:

> [This] presuppose[s] an adversary system that prefers to award victory to the best (or, at least, the most consistent) person, rather than the person with the best cause.... In modern times, adversarial presentation is thought desirable because: (1) it facilitates the truth-finding function of the trial if proof is found and presented by those with self interest; and (2) the moral acceptability of the ultimate judgment is enhanced by allowing participation by antagonists psychologically committed to opposing views.

Bein, *Parties' Admissions, Agents' Admissions: Hearsay Wolves in Sheep's Clothing*, 12 Hofstra L.Rev. 393, 420 (184). Bein argues that allowing party admissions does not necessarily facilitate the truth-finding function, because the job of the fact finder is not miraculously aided by such statements. The most important role that admissions play in the system, according to Bein, is enabling the fact finder to determine which parties are emotionally committed to their cases. Awarding favorable decisions in cases only to those truly committed to their causes can only have a

positive impact upon judicial resources. *Id.* at 421. "Where the party does not believe in his own cause, he is, by definition using the system for the wrong purpose. Were there a means of identifying him at the door, he could be rightly turned away. But we cannot afford to ignore proof of his deception simply because he is past the threshold." *Id.* at 422.

According to Bein's analysis, if Dr. Seeber were to take the witness stand and testify that Dr. DeLeo made certain statements to him about the drugs administered to Josiah, in a case where only Dr. DeLeo was a party to the action, those statements would be admissible under normal hearsay analysis as party admissions. Under Bein's analysis, they would be an indication of Dr. DeLeo's emotional commitment to his case, and so would be valuable to the jury. When considered, however, as statements made vicariously by Equine Classics, that analysis fails, as Bein indeed expects it to. Bein, *supra* at 431–38. Dr. DeLeo's statements cannot give any indication of the level of commitment Equine Classics has for its case. This is one of the arguments Bein makes against the broader vicarious admissions exception espoused by the Federal Rules of Evidence. *See* Federal Rule of Evidence 801(d)(2). Other commentators have similar concerns. They argue that statements of employees are not necessarily trustworthy or probative of an employer's actual case. Obviously an employee could lie, be mistaken, or merely like to talk loosely of things about which he knows nothing. *See, e.g.,* Falknor, *Vicarious Admissions and the Uniform Rules,* 14 Vand.L.Rev. 855, 856 (1961); Comment, *Elimination of the Agency Fiction in the Vicarious Admissions Exception,* 54 Wash. L.Rev. 97, 103 (1978).

In this Commonwealth, the problems of logic and fairness which proceed from the broad vicarious admissions exceptions have been avoided up to this point by our refusal to accept the broad hearsay exception of the federal rules. As was discussed above, the courts of this Commonwealth require stringent proof of both agency and of authority to

speak before vicarious admissions can be accepted into evidence. Under the law in this Commonwealth, Dr. DeLeo is not a speaking agent of Equine Classics. For that reason, his alleged statements cannot be allowed into evidence against Equine Classics under the vicarious admissions exception, regardless of whether the attempt is made to introduce them through testimony from the witness stand or through an insurance statement of which they are a part. Were we to allow his statements as party admissions because he is a party and hold Equine Classics liable for them, it would be of no persuasive value. What can Dr. DeLeo's statement tell us about Equine Classics' commitment to its case? Nothing. They are merely the statements of an employee not authorized to speak for a company. To allow such statements by a co-party into evidence as party admissions to be used against the company is at best illogical, at worst, unjust.

Were Equine Classics the only party involved in this case, there could be no argument for admission here. Were Dr. DeLeo the only party in the case, there could be no argument for admission of the insurance transcript containing the statements, and so no argument for the admission of the statements through that channel. We should not allow the joining of the parties in this situation to lead to a scenario in which the evidence which is inadmissible against each separately becomes admissible against both together. We find the connections between the insurance statement that is admissible only against Equine Classics and the party admissions that are admissible only against Dr. DeLeo to be too tenuous for admissibility in general, and too tenuous for their limited admissibility to promote justice.

Because we find that the trial court committed no abuse of discretion in refusing to admit into evidence the testimony of and insurance statement made by Dr. Seeber, we also find that the trial court did not err in refusing to remove the compulsory nonsuit.

Affirmed.

KELLY, J., concurs and dissents.

KELLY, Judge, concurring and dissenting:

I agree with the majority's conclusion that Dr. Seeber's recorded statement to defendant, Equine Clinics' insurance company, stating that Dr. DeLeo had administered Kymar, is not admissible into evidence against Dr. DeLeo. I disagree, however, with the majority's conclusion that the statement was not admissible against Equine Clinics. I would find that sufficient circumstantial evidence was presented to show that Dr. Seeber was an agent authorized by Equine Clinics when he gave the recorded statement. I would therefore find that the trial court erred in excluding Dr. Seeber's recorded statement.

Appellants alleged, and defendants/appellees admitted, that the representative from Equine's insurance carrier obtained the recorded statement from Seeber as part of its investigation into the reported loss. In order for a loss to be covered, Equine's insurance policy required it to cooperate with the investigation of reported losses; this cooperation specifically included providing the carrier with evidence and witnesses regarding the loss. Although there is no *direct* evidence that Seeber was requested to make the statement on behalf of Equine, I would find that appellants provided ample *circumstantial* evidence to show that Seeber gave the statement as part of Equine's duty under the insurance contract to cooperate with the carrier's investigation into the circumstances of the loss. This circumstantial evidence showed that Seeber acted within his authority in giving the recorded statement. I would therefore conclude that Dr. Seeber's statement to the insurance carrier would be admissible as to Equine Clinics under the vicarious admission exception to the hearsay rule. *See* Binder, Hearsay Handbook § 28.04 (2nd ed. 1983); McCormick, Evidence § 267 (3rd ed. 1984); *DeFrancesco v. Western Pennsylvania Water Company*, 329 Pa.Super. 508, 478 A.2d 1295 (1984).

As previously stated, I agree with the majority's conclusion that the statement is not admissible against Dr. DeLeo. However, I believe that the majority's reasoning, which

focuses on prejudice to Dr. DeLeo if the statement is admitted, is misplaced. The established remedy if such prejudice could be shown would be for the trial judge to order a bifurcation; in that way any prejudice to Dr. DeLeo would be avoided.

Accordingly, I would reverse the order granting the compulsory non-suit and remand the case for trial.