Christopher BRASURE, Plaintiff,

v.

OPTIMUM CHOICE INSURANCE COMPANY, Defendant.

No. Civ.A. 97–257 MMS.

United States District Court, D. Delaware.

Feb. 4, 1999.

---

Richard K. Goll, Wilmington, DE, for plaintiff.

Curtis J. Crowther, of Roeberg, Moore & Associates, P.A., Wilmington, DE, of counsel, David E. Manoogian, and Joanna Jesperson, Epstein, Becker & Green, P.C., Washington, DC, for defendant.

## OPINION

SCHWARTZ, Senior District Judge.

### I. INTRODUCTION

Defendant Optimum Choice Inc. ("OCI") is a health maintenance organization which provides health benefits under employee welfare benefit plans governed by ERISA. Plaintiff Christopher Brasure has filed a complaint against OCI under ERISA, 29 U.S.C. § 1132(a)(1)(B), seeking "to recover benefits due under terms of the plan." Plaintiff alleges that he was an eligible

member of an OCI employee health benefit plan provided by Brasure Pest Control, Inc. ("BPCI"), and as such is entitled to receive health benefits thereunder. OCI maintains plaintiff is not entitled to recover any benefits under the plan because of his omissions and/or misstatements in a risk assessment form.

On August 7, 1998, OCI filed a motion for summary judgment or alternatively, a motion to dismiss. Plaintiff countered by filing a cross motion for summary judgment. This Court has jurisdiction under 29 U.S.C. § 1132(a)(1)(B). For the reasons that follow, defendant's motion for summary judgment will be granted and plaintiff's cross motion for summary judgment will be denied.

## II. STATEMENT OF FACTS

In 1992 plaintiff Brasure was hospitalized for eight days, Docket Item ("D.I.") 56 at A–030, with a diagnosis of Autoimmune Hemolytic Anemia ("AIHA"), a serious blood disorder. In October 1994, he was again hospitalized for 14 days with a diagnosis of another blood disorder, Immune Thrombocytopenia Purpura ("ITP"), for which he underwent surgery to remove his spleen (splenectomy).

In June 1995, approximately eight months after Brasure's splenectomy surgery, BPCI applied to OCI for group health coverage for its employees because its group health insurer at that time, Guardian Insurance Company, sought to increase BPCI's premium. As a part of the OCI application process, each BPCI employee, including Brasure, was required to fill out an individual risk assessment form disclosing requested information about his/her medical history. The risk assessment forms were forwarded for approval to OCI's medical underwriting department. The approval of the underwriters was required before a group could be accepted for coverage at the quoted premium. The OCI medical underwriting department approved of BPCI's application, after reviewing the risk assessment forms

of each BPCI employee including Brasure. D.I. 56 at A–071–074.

In January 1997, plaintiff was hospitalized at Johns Hopkins for treatment of ITP. In February 1997, OCI sent a letter to plaintiff retroactively canceling his health coverage from the date he enrolled in the plan. OCI asserts that it retroactively canceled Brasure's health care coverage because he made omissions and misstatements in his risk assessment form concerning his medical history when he applied to OCI for health benefits. OCI urges that it has a right under the terms stated in the risk assessment form to cancel the coverage as if it were never effective.

The misstatements and/or omissions that are pertinent are the plaintiff's response to question 11 on the risk assessment form. Question 11 of the risk assessment form asks if any surgeries have been performed within the last five years, with a box to check either "Yes" or "No." Plaintiff's answer to question 11 was "No." It is admitted by the plaintiff both in his amended complaint and deposition that he underwent splenectomy surgery in October 1994, eight months prior to signing his risk assessment form application on June 27, 1995. D.I. 56 at A–029; D.I. 56 at A–112. Diane Brasure (the plan administrator for BPCI and plaintiff's mother), who filled out but did not sign plaintiff's risk assessment form, admitted in her deposition under oath that she answered question 11 incorrectly and that she omitted any mention of plaintiff's 1994 hospitalization and splenectomy on the risk assessment form. D.I. 56 at A–130. Diane Brasure also admitted in her deposition that she was aware that her son had undergone a surgical operation to remove his spleen. D.I. 56 at A–130. Plaintiff in his deposition admitted to signing the form. D.I. 56 at A–113–115.

The risk assessment form contains on its face the following express statements, all

of which appear on page two of the form above the signature line:

> I represent that to the best of my knowledge and belief, all statements and answers made on the form are true, complete and correct. . . .

> I understand that any omissions and/or misstatements regarding any medical history could cause an otherwise valid claim to be denied and/or cause the coverage to be canceled as if never effective.

D.I. 56 at A–002.

Duane Hatfield ("Hatfield"), the OCI underwriter who evaluated the BPCI risk assessment forms in June, 1995, testified that had Brasure's 1994 splenectomy been disclosed on the risk assessment form, he would have rejected the BPCI group for health coverage based on medical underwriting risk guidelines. D.I. 56 at A–073–077. Hatfield testified that the application would have been rejected because the annual premium that was quoted to BPCI, and which BPCI subsequently paid, would have been insufficient to cover the risk of higher costs associated with ITP blood disorder. He further stated it was possible that BPCI could still have been approved for medical coverage by OCI but only if it agreed to pay a higher group premium. D.I. 56 at A–076.

On February 10, 1997, Brasure's health coverage was terminated by OCI retroactively to July 15, 1995 for his failure to disclose the 1994 hospitalization and the splenectomy surgery on the risk assessment form. This appeal follows.

### III. STANDARD OF REVIEW

OCI has filed a motion for summary judgment, or alternatively, a motion to dismiss. Since the Court has considered matters presented outside of the pleadings, it will only consider OCI's motion for summary judgment. Under the Federal Rules of Civil Procedure, the court may grant summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine only if a reasonable jury could return a verdict for the nonmoving party. *See id.* When considering a motion for summary judgment, the court must "view all facts and inferences in the light most favorable to the party opposing the motion." *Stephens v. Kerrigan*, 122 F.3d 171, 176–77 (3d Cir. 1997). The Supreme Court has clarified that the moving party must "bear the initial responsibility of informing the Court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After such a demonstration has been made, however, the nonmoving party must go beyond the pleadings and, based on the same types of evidence, must demonstrate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548. The nonmoving party cannot rest on his allegations without "any significant probative evidence tending to support the complaint." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505 (citing *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). *See also Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989) (stating that a non-moving party must "adduce more than a scintilla of evidence in its favor . . . and cannot simply reassert factually unsupported allegations contained in its pleadings").

### IV. DISCUSSION

**A. Is the risk assessment form admissible into evidence—18 Del.C. § 2710**

The risk assessment form which forms a part of the application was not attached to

the policy when it was issued to the plaintiff. The first time that the plaintiff received the risk assessment form was on January 14, 1997, when he was notified that his coverage was canceled. Del.Code Ann. Title 18 § 2710 states in relevant part:

**Application as evidence.**

(a) No application for the issuance of any life or health insurance policy or annuity contract shall be admissible in evidence in any action relative to such policy or contract, unless a true copy of the application was attached to or otherwise made a part of the policy or contract *when issued.*

(emphasis added). Delaware insurance law requires that the application be attached or otherwise be made a part of the policy when issued for it to be admissible in evidence. Here the risk assessment form is a part of the application and it was not attached to the policy. OCI asserts § 2710 was satisfied because the risk assessment form was made a part of the policy by making it a basis for terminating the coverage. OCI's argument if accepted would violate the statutory requirement that the risk assessment form be made a part of the policy or contract when issued. Courts have held that where a statute requires that a copy of the application be attached to or indorsed upon the policy, it is not sufficient to refer to the application in the policy or to declare it a part thereof without actually attaching a copy to the policy. *See Life Ins. Co. v. Chenault,* 252 S.W.2d 851 (Ky.1952)

■ The Court holds that the risk assessment form is not admissible into evidence under § 2710 and OCI cannot make use of the misstatements and omissions in the risk assessment form to deny coverage to the plaintiff. *See Economy Fire & Casualty Co. v. Thornsberry,* 66 Ill.App.3d 225, 227, 23 Ill.Dec. 13, 383 N.E.2d 780 (1978) (in action by insurer seeking to avoid policy of automobile insurance on ground that totally disabled insured had made material misrepresentation on application that he was not physically or mentally impaired, summary judgment was properly entered for insured since a copy of application had not been attached to policy and, by statute, the insurer could therefore not rely on misrepresentation to defeat policy).

**B. Are the omissions and misstatements made by plaintiff nonetheless admissible into evidence because of judicial admissions**

Ordinarily, OCI's failure to attach the risk assessment form on issuance of the policy would mean OCI could not rely on the omissions and/or misstatements. However, this is no ordinary case because of the issue that now confronts the Court. The issue is whether the plaintiff's own judicial admissions which assert that question 11 in the risk assessment form was incorrectly answered and that the 1994 hospitalization and splenectomy were not mentioned are nonetheless admissible, despite the risk assessment form being held to be inadmissible. The intent of the Delaware legislature in enacting § 2710 was to make available to the insured a copy of the application so that he or she could review it and bring to the insurer's attention any errors. This protected the insured from any subsequent action by the insurer to deny coverage based on an omission or misstatement in the application. The issue then becomes on the facts of this case whether judicial admissions should be employed to defeat the intent of the Delaware legislature in enacting § 2710.

■ The rationale for recognizing judicial admissions is to reduce the number of factual issues in dispute thereby allowing the parties and the court to focus on the relevant issues. *See Durkin v. Equine Clinics, Inc.,* 376 Pa.Super. 557, 569, 546 A.2d 665, 670 (1988); *Duquesne Light Co. v. Woodland Hills School Dist.,* 700 A.2d 1038 (Pa.Cmwlth., Sep.12, 1997). In considering a motion for summary judgment a court may consider the pleadings, includ-

ing attachments to the complaint, affidavits, depositions, answers to interrogatories or answers to requests for admissions.

■ The plaintiff in his amended complaint states that Diane Brasure failed to disclose that Brasure had a surgery to remove his spleen in 1994. Moreover, plaintiff admitted in response to OCI's request for admissions that Diane Brasure was aware when she filled out the risk assessment form that plaintiff was hospitalized in 1994 and had a splenectomy operation and that she failed to disclose this information on the risk assessment form. D.I. 56 at A–041–042. Under Federal Rule of Civil Procedure 36(b) any admission made pursuant to a request for admission is admitted unless the court on motion permits withdrawal or amendment subject to court strictures. The Court therefore must consider the admissions made by the plaintiff.

■ The Court holds that the judicial admissions do not defeat the statutory scheme intended by the Delaware legislature when it enacted § 2710. Judicial admissions serve an important purpose of promoting both judicial economy and preserving the resources and efforts of the litigants by focusing on disputed issues. As discussed above the intent of the Delaware legislature in enacting § 2710 was to protect the insured from any subsequent action by the insurer to deny coverage based on an omission or misstatement and not to protect the insured from his own affirmative decision to make judicial admissions of the omissions and misstatements. Insurers should recognize that if they do not attach the application or make it a part of the policy they cannot subsequently use omissions or misstatements made by insured in the application to deny coverage, unless, as occurred here, the insured makes a judicial admission of the facts. To the extent there is such admission, the admission as distinguished from the application may be considered by the Court. This holding is in no way violative of § 2710 since it is the admission rather

than the application that is put into evidence.

This is best illustrated by the Court's decision that the express statements made in the form which are not the subject of judicial admissions are inadmissible. Specifically, the express statement that "I understand that any omissions and/or statements regarding any medical history could cause an otherwise valid claim to be denied and/or cause the coverage to be canceled as if never effective" is inadmissible. Therefore, OCI cannot revoke the plaintiff's coverage based on this express statement.

Instead, one must look to ERISA to determine the effect of the misrepresentation. ERISA is silent as to the issue of the "effect of material misrepresentations made in good faith on an application for enrollment in a group health and accident life insurance policy provided by an employer" under a qualified plan. *Tingle v. Pacific Mutual Ins. Co.*, 837 F.Supp. 191, 192 (W.D.La.1993). Federal courts have looked to either state law or federal common law in determining the effect of material misrepresentations on ERISA claims.

■ Under federal common law, a misstated or omitted fact is deemed "material" if it could reasonably be considered as affecting either the insurer's decision to enter into the contract, its evaluation of the risk or its calculation of the risk or its calculation of the premium to be charged. *Davies v. Centennial Life Insurance Co.*, 128 F.3d 934, 944 (6th Cir.1997); *Nachwalter v. Christie*, 805 F.2d 956, 959 (11th Cir.1986). The Supreme Court has held that the failure to disclose conditions known to the applicant that would affect the risk renders the policy voidable. *Stipcich v. Metropolitan Life Ins. Co.*, 277 U.S. 311, 316, 48 S.Ct. 512, 72 L.Ed. 895 (1928).

■ Hatfield testified that had plaintiff's 1994 splenectomy been disclosed on the risk assessment form, he would have rejected BPCI's application. D.I. 56 at A–

073–077. He reasoned he would have done so because pursuant to the medical underwriting risk guidelines, the quoted annual premium would have been insufficient to cover the risk of higher costs associated with the ITP blood disorder. D.I. 56 at A–075. Given that Hatfield's testimony was unchallenged, the Court concludes the omissions and misstatements were material and OCI is entitled to rescind the plaintiff's policy under federal common law.

Delaware state law yields the same result as federal common law. This Court has held nondisclosures of serious disease or ailments to be material as a matter of law. *Oglesby v. Penn Mutual Life Ins. Co.*, 877 F.Supp. 872, 889 (D.Del.1994). In *Oglesby*, this Court held that an enrollee has a duty to disclose information concerning any material physical disease in his past that is known to him. 877 F.Supp. at 888. If the enrollee does not do so he or she has failed to meet the duty to act with "utmost fairness." *Id.* Where the duty of utmost fairness is not met due to applicant's knowledge, Delaware courts have "consistently held" that a court may grant rescission on an insurance contract based on misrepresentation. *Riblett v. Horace Mann Ins. Co.*, C.A. No. 12884, 1994 WL 449110*2 (Del.Ch. Aug.11, 1994); *Prudential Ins. Co. of America v. Gutowski*, 49 Del. 233, 113 A.2d 579 (1955); *American Cas., Co. of Reading, Pennsylvania v. Ford*, 187 A.2d at 427 (Del.Ch.1963).

The Court has already decided above that plaintiff's failure to disclose his 1994 hospitalization and surgery to remove his spleen was material. Both the plaintiff and his mother who filled out the form had knowledge of the above material facts and by failing to disclose breached their duty of "utmost fairness." The Court is not persuaded by plaintiff's contention that OCI was under a duty to investigate further. The *Oglesby* court noted:

It is a fundamental proposition in insurance law, consistent with Delaware law, that the insurer may rightfully rely upon the statements in the application without checking all of its files to determine whether the insured is concealing or misrepresenting facts.

*Id.* at 895.

The Court holds that under Delaware state law, OCI is entitled to rescind plaintiff's policy.

## V. CONCLUSION

For the reasons stated above, an order will be entered granting defendant's motion for summary judgment and denying plaintiff's cross motion for summary judgment.